GILBERTO M. GARCIA, LLC
25 East Spring Valley Avenue
Suite 330
Maywood, New Jersey 07607
Tel :  (201) 328-7042
Fax :  (201) 445-5855
gilberto13@me.com

*Attorney For Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| ANSELMO MILLAN, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| MUNICIPALITY OF HARRISON, JAMES A. FIFE, individually and in his official capacity. | COMPLAINT |
| Defendants. | DEMAND FOR JURY TRIAL |

_____

**PRELIMINARY STATEMENT**

1. This is an action brought by the Plaintiff against the Municipality of Harrison and Mayor James A. Fife, individually and in his official capacity.  Plaintiff seeks judgment in this Court against Defendants for relief permitted under the Civil Rights Violations under 42 U.S.C. Section 1983 ("Section 1983") and violations

1

of Plaintiff's First Amendment rights under the Federal and State Constitutions and Due Process rights under the Federal and State Constitutions.

2. This case challenges the constitutionality of actions taken by the Town of Harrison through its representatives under the guidance of its Mayor, which deprived the Plaintiff of his constitutional right to provide services to the community in the Town of Harrison and provide to Harrison constituents services not otherwise provided by the Town.

3. In an act of political retaliation against the Plaintiff when he announced that he would run for Mayor of the Town of Harrison, the Mayor of Harrison, James A. Fife, closed the office used by Harrison Development, which was used by Plaintiff Council person Anselmo Millan, as its leader and creator, to perform duties for the betterment of the Town of Harrison.

**PARTIES**

4. Plaintiff, ANSELMO MILLAN ("Millan" or "Plaintiff") was and is a resident of the State of New Jersey, residing in Hudson County, Town of Harrison. Plaintiff was, at all times relevant herein, a Council person of the Town of Harrison.

5. Millan was at all relevant times herein a representative of Harrison Community Development Partnership and Harrison Fest Inc., non-profit corporations serving the constituents of the Town of Harrison, and Harrison Fest.

6. Defendant Town of Harrison is a municipality created under the laws of the State of New Jersey.

7. Defendant James A. Fife ("Mayor Fife") is the Mayor of the Town of Harrison. At all times relevant to the claims alleged herein, Mayor Fife served as the Mayor

of the Town of Harrison. He is being sued individually and in his official capacity serving as the chief policy and decision maker for the Town.

## JURISDICTION

8. This action arises under the First, Fifth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. Section 1983.

9. Jurisdiction is properly laid in this Court pursuant to 28 U.S.C. Section 1331, 1332, 1343(a)(3)(4).

10. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

11. Venue is proper pursuant to 28 U.S.C. Section 1391(b).

## FACTS COMMON TO ALL CAUSES OF ACTION

12. In 2010-2011, the Plaintiff was a catalyst and driving force in the creation of Harrison Downtown Community Development Partnership ("Harrison Development"), a not for profit Corporation of New Jersey, for the sole purpose to provide services to the community of Harrison.

13. The Town of Harrison allowed Harrison Development under the leadership of the Plaintiff to serve the Harrison community via a municipal resolution, which upon information, was recorded in the Town records in the year 2011. Although this Resolution was adopted by the Town's legislative body, the Town failed to adopt a policy to maintain and deal with the relationship between not for profit

corporations aiding the community and the responsibilities to it, including proper termination of the relationship, by the Town.

14. Plaintiff was the head of Harrison Development and his affiliation with the not for profit was a significant factor in its success as a community service provider. Harrison Development received an office within a municipal government building, at no cost, in order for Harrison to better serve the community. Plaintiff enjoyed his activities and his association with Town's residents and constituents and it was a non political relationship, founder exclusively for the better of the community. As described below, Mayor Fife, as the chief policy maker, took retaliatory action against the Plaintiff. The Town followed by supporting Mayor Fife in his retaliation by executing the closure of the offices and failing to create any official policy to avoid the retaliatory closure of the offices.

15. For 8 years, the Town of Harrison, under different Mayors and Council Members provided office space to Plaintiff in order to run Harrison Development and Harrison Fest Committee Inc. At the time of the acts that give rise to the cause of action here, the office was located at the Harrison Senior Citizens Center.

16. On or about March 2, 2018, Defendant Mayor Fife, terminated Harrison Development's office space use. Defendant Mayor Fife ordered the closing of the office and did not permit the staff of Harrison Development to access the office. The files of constituents and other projects of Harrison Development and Harrison Fest Inc. were confiscated by the Town of Harrison staff.

17. These files and other documentation contained personal information provided by the constituents and residents of the Town of Harrison during their sessions with the staff of Harrison Development and Harrison Fest Inc. The information included Social Security numbers and other confidential information provided by those who sought aid with different subject at the office.

18. The information kept by the Town of Harrison also included all the corporate records of the not for profit for the last 8 years.

19. To date, the Town of Harrison has failed to account for any of the files and corporate records that it has kept.

20. When Plaintiff requested a reason for the sudden and unexpected closure, the Mayor responded.

21. In a letter dated March 2, 2018, Mayor Fife addressed the rationale behind his decision.

22. Mayor Fife, in his letter that "as you're aware, approximately two years ago you asked me for the temporary use of some office space at the Harrison senior citizens to work on the Harrison festival celebrations."

23. That statement by Mayor Fife was false and self-serving. In 2011, Mayor Raymond McDonough and the Town of Harrison Council, unanimously established a committee called the Economy Community Revitalization and

Grants. This committee was created by way of municipal resolution. As a result the office of Harrison Development has been at the Senior Center since 2011.

24. The Mayor also alleged in his letter that "despite objections from various council persons that no other counsel person has been provided office space in the past and he had somehow generously provided one to the Plaintiff."

25. Other council persons have offices. The Fire Department chair counsel person has an office. The Police Department chair council person has an office. The Recreation Chair counsel person has an office in the Community Center. Finally the Street Department chair council person has an office in the Department of Public Works. Mayor Fife lied in his letter explaining his retaliatory conduct to the Plaintiff.

26. Mayor Fife alleges in his letter "the permission to use the office was conditional as it was a temporary arrangement and more significant, it was not to be used for plaintiffs personal private office." While other council persons had offices, the statement of Mayor Fife clearly demonstrates the Plaintiff did not have an office as a council person. As stated by Mayor Fife, the office at the Senior Center was for the community activities of Harrison Development.

27. Contrary to the false allegations of Mayor Fife, made intentionally to support his retaliatory conduct against the Plaintiff immediately after Plaintiff advised he was running for Mayor of the Town of Harrison, the Plaintiff did not use his office as a personal private office.

28. Evidence of the fact that the office was used by Harrison Development is the computer provided by the Town of Harrison. This computer was linked to the

Harrison Town computer server. The only business done on that computer was for community work, including the Economy Community Re-vitality session and grants; the Business District, and the Facades program.

29. The computer also contained Harrison Development's community help. Community individual help included the attempt for resolution of constituent issues related to PSEG's electric gas and bills of constituents; Sandy Relief grants, naturalization drive use Program and Environmental Club. Evidence of the foregoing programs and Town participation is the many photographs of Mayor Fife participating in meetings and functions at the Senior Center and throughout town with the Plaintiff and other Harrison Development staff.

30. Mayor Fife went on to further state in his letter "from the office space you conducted business related to the 2016 and 2017 Harrison Fest celebrations. Despite your contentions that these celebrations did not cost Harrison taxpayers any money, the Town provided cost for public safety and public works support for which the town did not receive reimbursement."

31. The truth was that the Harrison Fest Three Day Celebrations events (see www.HarrisonFest.org) were for the benefit of the Town of Harrison and its residents. Mayor Fife only mentions 2016 and 2017 because Harrison Fest Committee Inc. planned and incorporated the Town of Harrison's 175th Anniversary Celebrations in 2015.

32. The Mayor is the Chairman of Harrison Fest and Mayor Fife's name went on every letter to the public along with Plaintiff's name and signature. Mayor Fife signed every letter. He was involved on a daily basis in Harrison Fest planning.

33. There is a video on You Tube and the ForABetterHarrison.com website and Facebook page (Facebook.com/ForABetterHarrison) where Mayor Fife (pre-mayoral election decision of Plaintiff) commends the Plaintiff for all the hard work he did and his committee did to make Harrison Fest Celebration a success. The agreement from the beginning of Harrison Fest was that the Town would provide the Police during the Parade and Street Festival and the DPW Street Department would provide clean up services at the end of each day Saturday night and Sunday night to clean up Harrison Avenue (where Street Festival is held).  All other expenses are paid for by Harrison Fest Committee Inc.

34. Mayor Fife further accused the Plaintiff of failing to provide an accounting alleging "despite requests from councilmembers for an accounting of the monies received and disbursed for the celebrations, none have been provided."

35. Mayor Fife was the Chairman of Harrison Fest. Harrison Fest filed income tax returns every year.  The Mayor knew the finances of Harrison Fest.  He was involved in a daily basis and fully aware of planning and finances.

36. Mayor Fife further alleged that "recently, I received a call from the County advising that the Town was going to lose the $140,000 in grant money as you (Plaintiff) have done nothing on the Facade Program. This program was one of the main reasons that I allowed you to use the office space."

37. When Plaintiff received notice of the grant from the CDBG Hudson County, Harrison Development representatives had meetings with the Hudson County Business Center and Woman Enterprise, the Hudson County Economic Development, State of New Jersey Small Business Center, Tony Lazroe (Grant

Writer) and Mayor Fife, to prepare to allocate this money with the approval of the Mayor in the block 300 and 400 of Harrison Avenue.

38. When everything was almost ready Plaintiff received a call from the County that the Mayor pulled the money away and Plaintiff could not do anything about it. This occurred after Plaintiff made the announcement he was running for Mayor.

39. Mayor Fife stated to Plaintiff that "when I met you at the Chinese New Year Celebration at the Center on February 18th, I advised you that since you were not going to be working with the Mayor and Council on public town business from the office space, you had to vacate same." This was an act of retaliation because the Plaintiff running against Mayor Fife for Mayor of the Town of Harrison. A week later, Mayor Fife ordered the head of the DPW Robert VanRiper to go to the Senior Center and remove persons in the Harrison Development office and changed the lock to the office.

40. After Plaintiff announced he was running for Mayor, Harrison Fest was unable to hold its Holiday Celebration Dinner with Santa Claus which fed 1300 person in 2017 and gifts to every child age appropriate. Instead, it held a modified Holiday Celebration Dinner in 2018 outside at Spanish Pavilion, a restaurant in Harrison, which was successful. In addition A Turkey Drive was held 2018 in the driveway of Plaintiff's house, which gave out complete dinner baskets with all the fixings for 6 family members including the Turkey. Pictures on HarrisonFest.org and facebook page.

41. Mayor Fife lied in his letter.

42. Mayor Fife also fired some of Plaintiff's political supporters in retaliation for Plaintiff's announcement.  For example, Mayor Fife, immediately after Plaintiff announced he was running for Mayor, had Monica Miguens, a close political ally to the Plaintiff, fired from Teacher's Aide Harrison Board of Education.  James Doran Councilperson and Director of Personnel executed the firing.  Another example of immediate retaliatory firing was that of Alicia Monterossa, the mother Tiffany Monterossa, a candidate running in Plaintiff's ticket.  Ms. Monterossa was fired from the Hudson County Community Action Medical Clinic in Harrison at request of Mayor Fife.  These firings were made in political retaliation.

43. Plaintiff was requested to engage in the political patronage of Mayor Fife and when he refused claiming that he was going to run for Mayor, Mayor Fife sought immediate retaliation against him and those close to him.

44. Mayor Fife had advised Plaintiff that he was seeking political connections and expected his support.  When Plaintiff politely and respectfully refused to engage in such conduct only because he had the right to refuse it and did not agree with it, Defendant Fife advised him that such position was not the best to take.

45. As soon as Mayor Fife found a reason to retaliate against Plaintiff, albeit improper, he exercised such power in violation of Plaintiff's First Amendment Rights to freedom of speech and association and terminated the office use of Harrison Development with false accusations of non-existent misconduct.

46. Harrison Development's office at the Senior Citizen Center was closed without any discussion or opportunity to discuss the issues that had been raised regarding its use and the sudden and retaliatory closure.

47. The actions of Mayor Fife were taken exclusively for political reasons. Harrison Development's office was closed with the excuse of false accusations of improper intentional conduct on the part of the Plaintiff. This discriminatory conduct was effectuated pursuant to an official policy practice of Mayor Fife and was undertaken by him with his final policymaking authority over such actions.

48. The fact that Plaintiff failed to participate in the requests for political loyalty on behalf of Mayor Fife after Plaintiff chose to run for Mayor, was a motivating factor by Mayor Fife and his Town of Harrison officials in terminating the use of the Harrison Development. This is part of unfortunate, ugly and disgusting but nevertheless real, political back watching.

49. The foregoing violations of the law were overseen by agents, officials, employees and other individuals acting on the Town of Harrison's behalf, who ratified such violations by Defendant Mayor Fife's actions. The foregoing actions were retaliatory and violations of law. Defendants were in a position to stop the illegal behavior, but they failed to take remedial action and acted with willful indifference to the violation of Plaintiff's civil rights.

50. Plaintiff's constitutionally protected activities such as his right to freedom of speech and to participate in the political process as a candidate for Mayor, as aforementioned, were the substantial or motivating factors for Defendants' retaliatory conduct.

51. As a direct and proximate result of the Defendants' illegal and wrongful actions, as described herein, Plaintiff suffered anxiety, ridicule, public humiliation, indignity, loss of standing in the community, mental anguish, incurring legal expenses and other expenses as a result of defendants actions.  As a result of Defendants' action, directed at political retaliation against Plaintiff for his decision to run for Mayor, the community of the Town of Harrison suffered the loss of programs designed to aid it.

## COUNT ONE

52. Plaintiff repeats and realleges each and every allegation contained above as even fully set forth herein.

53. No citizen of a municipality should be subjected to political retaliation under false pretext by the municipality's Mayor because he is going to get involved in a political campaign against the Mayor.

54. The foregoing actions of Defendants, acting under color of law, subjected Plaintiff to the violation of his constitutional rights of freedom of speech, freedom of association in violation of 42 USC section 1983, the $1_{st}$ and 14 amendments of the United States Constitution.

55. Plaintiff had sufficient liberty and property interests in his relationship as the leader of a not for profit aiding the community of the Town of Harrison.  The Town and Mayor Fife closed the office where he led the community service for sufficient cause or allow the not for profits led by him proper notice and a hearing because the Town lacked any proper and just policy with regard to its treatment of not for profit organizations serving the community of the Town.

56. The Plaintiff's constitutionally protected activities and his refusal to directly participate in political patronage, as aforementioned, were the motivating factor for defendant's Mayor Fife's retaliatory conduct.

57. Defendants intentionally, willfully and recklessly retaliated against, harassed Plaintiff and denied Plaintiff's first amendment rights to freedom of speech and freedom of association.

58. As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, Plaintiff suffered social ridicule, public humiliation, indignity, loss of standing in the community, physical injury, mental anguish, the loss of opportunities for prospective employment, is incurring legal expenses, and other expenses as a result of Defendants' actions.

59. Defendants' acts of retaliation are a violation of state and federal law and run afoul of the public policy of the State of New Jersey.

60. As a direct and proximate result of the Defendants' wrongful actions, Plaintiff has suffered.

61. The foregoing actions were knowing, willful and deliberate violations of law and deprivation of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

WHEREFORE, Plaintiff, Anselmo Millan, respectfully requests this Honorable Court:

a. Enter a declaratory judgment that Defendants' unlawful conduct complained of herein violated and continues to violate Plaintiff's rights as secured by the United States Constitution.

b. Enjoin Defendants from continuing their unlawful conduct;

c. Award Plaintiff compensatory damages including but not limited to plaintiff's economic, noneconomic, and emotional distress damages for anxiety, ridicule, public humiliation, indignity, loss of compensation, fringe and other benefits, loss of earning power, loss of self-esteem, loss of standing in the community, physical injury, mental anguish and loss of opportunities for prospective employment.

d. Award reasonable costs and attorneys' fees.

e. Award punitive damages, and

f. Grant any other relief this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 28, 2020

/s/ Gilberto Garcia
_____
GILBERTO M. GARCIA
ATTORNEY FOR PLAINTIFF