**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANSELMO MILLAN,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF HARRISON, *et al.*,<br><br>    Defendants. | No. 20cv2241 (EP) (CLW)<br><br>**OPINION** |

**PADIN**, **District Judge.**

Plaintiff Anselmo Millan, formerly a Harrison, New Jersey Councilman, brings a First Amendment retaliation claim against Defendants Town of Harrison ("Harrison") and Mayor James A. Fife ("Fife") pursuant to 42 U.S.C. § 1983. D.E. 1 ("Compl." or "Complaint"). Plaintiff alleges that Fife retaliated against Plaintiff for running competing mayoral campaigns in 2018 and 2022 by locking Plaintiff out of office space at a local senior center (the "Office").

Defendants now move for summary judgment. D.E. 39 ("Mot."). Because Plaintiff filed this action more than two years after his cause of action accrued, the Court will **GRANT** Defendants' motion and **DISMISS** the Complaint.[1]

---

[1] The Court decides the motion without oral argument. Fed. R. Civ. P. 78; L.Civ.R.78(b).

I.      **BACKGROUND**[2]

In March 2016, Harrison received a grant from the Hudson County Community Development Block Grant Program ("CDBG") for façade work to reinvigorate a Harrison business district. Mot. at 2 (citing D.E. 39-3 at 36 (Ex. 6)); D.E. 39-3 at 24 (Ex. 3). At about the same time, Fife permitted Plaintiff to use the Office "temporarily" for the "façade [work] and a couple of other things." Fife Dep.[3] 8:15-20. During his time at the Office, Plaintiff also, with Fife's knowledge, worked on a town festival. *Id.* 13:9-14. There was no lease for the Office.[4]

In early 2018, Harrison received notice that the CDBG grant money would be revoked because the intended façade work had not been completed. *Id.* at 8-13. On February 18, 2018, at a Chinese New Year event, Fife advised Plaintiff that Plaintiff's use of the Office would be terminated because the grant work had not been completed. Mot. at 2; Pl. Facts ¶ 5; Compl. ¶ 39; D.E. 39-3 at 37.

Five days later, on February 23, 2018, Harrison had the Office's locks changed. D.E. 39-3 at 32 (Ex. 4, locksmith receipt). A secretary called Plaintiff's attorney's office to inform him of the lockout. D.E. 39-3 at 15.

On March 1, 2018, Plaintiff sent a letter to Harrison's attorney. D.E. 39-4 at 34 (Ex. 5). The letter stated that: (1) the Office was meant to house Harrison Development (a community

---

[2] Defendants' Statement of Material Facts, D.E. 39-1 ("Defs. Facts"), and Plaintiff's response, D.E. 41 ("Pl. Facts") do not comply with Local Civil Rule 56.1, because they contain legal arguments and conclusions of law. *See*, *e.g.*, Defs. Facts ¶ 4 ("Plaintiff had no property – or other constitutionally protected – interest in the gratuitous and temporary office given to Harrison Development."). Accordingly, these facts derive primarily from the record and the few facts undisputed by Plaintiff.
[3] Ex. 9, transcript of Fife's March 10, 2022 deposition. D.E. 39-3 at 45.
[4] Plaintiff testified that there was some "documentation" related to the Office, but answered that he did not know whether there was any email, contract, or lease documenting his rights to use the Office. Pl. Dep. at 28-30. Fife denied the existence of any documentation. Fife Dep. at 15:4-14.

2

organization), and the Neighborhood Preservation Program ("NPP"), of which Plaintiff was commissioner; and (2) Plaintiff considered Harrison's actions to be an illegal lockout. *Id.*

On March 2, 2018, Fife responded that the "façade program failed due to [Plaintiff's] inaction," and that—referring to the town festival Plaintiff had worked on—it was not in Harrison's "best interests . . . to allow [Plaintiff] to continue using public office space for what has turned into a private celebration by a private entity." D.E. 39-3 at 36 (Ex. 6).

According to Plaintiff, the lockout had nothing to do with his work. Instead, Plaintiff argues, the lockout was meant as retaliation for Plaintiff challenging Fife in the 2018 mayoral primary election.[5]

Plaintiff filed the Complaint on March 2, 2020. The Complaint originally alleged both First Amendment retaliation and Due Process Clause violations. *See* Compl.

Defendants moved to dismiss the Complaint as time-barred and for failure to state a claim. D.E. 3. Judge Salas, who was previously assigned to this matter, dismissed the Due Process Clause violation as time-barred. D.E. 19. But Judge Salas denied the branch of Defendants' motion seeking to dismiss the First Amendment retaliation claim. *Id.* Judge Salas held that it was unclear, at that juncture, when Plaintiff's cause of action began to accrue. *Id.* at 4.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Mot. Plaintiff opposes. D.E. 42 ("Opp'n"). Defendants reply. D.E. 43 ("Reply").

---

[5] Defendants ask the Court to take judicial notice of Plaintiff's political career, pointing the Court to the entire Hudson County Elections online archive. *See* Mot. at 4 (citing https://www.hudsoncountyclerk.org/elections-archives/). Defendants' counsel is reminded that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Facts—even those established by judicial notice—must still be supported with specific citations. Nevertheless, Plaintiff does not dispute the facts germane the Court's analysis of his retaliation claim: he challenged Fife for mayor.

3

## II.     LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the basis for its motion and demonstrating that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must cite specific materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).

If the moving party adequately supports its motion, then the burden shifts to the nonmoving party to "go beyond the pleadings" and identify specific facts in the record that demonstrate a genuine dispute for trial exists.  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  Specifically, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to provide such evidence, or where the "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50).  However, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But even if material facts remain disputed, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

### III.   ANALYSIS

Defendants make three arguments in support of their summary judgment motion: (1) Plaintiff lacks standing to pursue his retaliation claim because the Office was loaned to Harrison Development, not Plaintiff; (2) Plaintiff's retaliation claim is barred by 42 U.S.C. § 1983's two-year statute of limitations; and (3) there is insufficient evidence supporting Plaintiff's retaliation claim. *See* Mot. The Court addresses the statute of limitations first as a threshold question.

New Jersey's statute of limitations for § 1983 claims is two years. *Lewis v. N.J. Dep't of Children & Fams.*, No. 22-2782, 2023 U.S. App. LEXIS 18725, at *7 (3d Cir. July 24, 2023). But while the applicable statute of limitations in a § 1983 case is determined by state law, the accrual date is a federal law question. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The accrual inquiry is objective, turning not on what the plaintiff *actually* knew, but on what a reasonable person *should* have known. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.*; *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (accrual may be delayed until "plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has

been injured, and (2) that this injury has been caused by another party's conduct"). If Plaintiff's § 1983 action began to accrue prior to March 2, 2018, the March 2, 2020 Complaint is untimely.

Defendants argue that the retaliation claim began to accrue on: (1) February 18, 2018, when Fife informed Plaintiff that he would be locked out; (2) February 23, 2018, the date of the actual lockout when Plaintiff's secretary called Plaintiff's attorney's office about the lockout; or (3) March 1, 2018, when Plaintiff wrote a letter to Fife arguing that the lockout was illegal. Thus, Defendants argue, Plaintiff's Complaint, filed March 2, 2020, is time-barred.

The Court agrees. "It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (cleaned up). A tort cause of action accrues, and the statute of limitations begins to run, when the wrongful act or omission results in damages, even though the full extent of the injury may not then be known or predictable. *Id.* at 392.

The Supreme Court has held that accrual of a First Amendment claim depends on the date of the "operative decision." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (First Amendment claim alleging termination based on political speech accrued when the improperly motivated decision to terminate was communicated to the plaintiff, not when the termination occurred); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (holding that a "city's decision to institute formal abatement hearings, and its notice to appellant of that decision, was the 'operative decision' for the purposes of triggering the § 1983 statute of limitations" not the hearing itself); *Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC, 2020 U.S. Dist. LEXIS 166655, at *32-33 (D. Or. Apr. 24, 2020) (because vote to ban plaintiff from board executive session was the "operative decision" or "discriminatory act," First Amendment retaliation claim accrued on the day plaintiff received notice of the exclusion vote).

Here, Plaintiff testified that he knew as early as February 18, 2018 that the lockout was a possibility and politically motivated. *See* Pl. Dep.[6] 37:21 (Fife to Plaintiff: "[Y]ou don't want to work with me, you want to run for mayor . . . Well, if you do that you don't want to work I lock your office and I'm going to take you out of there."). There is likewise no dispute that Plaintiff knew about the February 23, 2018 lockout. Though it is unclear exactly when he received a phone call that the lockout had occurred, he acknowledged the lockout in a March 1, 2018 letter to Fife. D.E. 39-3 at 34. Still, he did not file his Complaint until March 2, 2020, over two years later. Accordingly, the Complaint is time-barred.

Plaintiff acknowledges the two-year statute of limitations. Opp'n at 12. Plaintiff argues, however, that the limitations period did not begin to run until March 2, 2018, when he learned from Fife's letter that the lockout was political retaliation. *Id.* at 13-14. Plaintiff provides no support for an argument that a retaliation action begins to accrue only when a plaintiff becomes aware of a retaliatory *motive*, rather than the retaliatory *act*. As discussed above, the reverse is true.

But even accepting Plaintiff's theory, Plaintiff admitted awareness of Fife's alleged motive at the February 18, 2018 Chinese New Year event. *See* Pl. Dep. 37:21 ("[Y]ou don't want to work with me, you want to run for mayor. . . . Well, if you do that you don't want to work I lock your office and I'm going to take you out of there."). Even if Fife's statement did not adequately tie the lockout to the motive, the five-day lapse between Fife's warning and the actual lockout was enough to connect the dots. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (plaintiff's receipt of traffic tickets was sufficiently proximate to protected activity to imply causal connection).

---

[6] Ex. 10, Plaintiff's April 7, 2022 deposition. D.E. 39-3 at 57.

Finally, Plaintiff also argues that his claim is not time-barred because there were "other discrete retaliatory acts under § 1983" that completed Plaintiff's retaliation claim. Opp'n at 14.

This argument fails for multiple reasons. First, Plaintiff relies upon Plaintiff cites to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-22 (2002), which involved an unrelated statutory interpretation question. Specifically, *Morgan* held that Title VII hostile work environment claims are an unlawful employment "practice" which, by definition, can comprise multiple events, including those outside a limitations period. *Id.*

And second, even if the Court were to stretch *Morgan*'s reasoning to encompass the facts here, Plaintiff's examples of these "discrete retaliatory acts" are vague, opaque, and unsupported. For example, Plaintiff cites Fife's March 2, 2018 letter to Plaintiff as an example of a retaliatory act, including "new accusations of wrongdoing." Opp'n at 14. But Plaintiff does not identify the accusations, explain how they constitute retaliation, or provide any other detail.

Plaintiff also invokes other retaliatory acts in his Complaint. *Id.* at 15 (citing Compl. ¶¶ 40, 42-43). Specifically, first, "Harrison Fest was unable to hold its Holiday Celebration Dinner with Santa Claus which fed 1300 person [sic] in 2017." Compl. ¶ 40. Second, Fife fired Plaintiff's political supporters. *Id.* ¶ 42. And third, Fife "sought immediate retaliation against him and those close to him" when Plaintiff ran against him. *Id.* ¶ 43. Each of these claims, however, is neither detailed nor supported by any record evidence. Accordingly, the Complaint will be dismissed as untimely. Based on this dismissal, the Court need not address Defendants' other arguments.[7]

---

[7] For the sake of completeness, however, the Court notes that a genuine issue of material fact would be found. Defendants' standing and evidentiary arguments share a common fact question: who was authorized to use the Office, and how. And the record contains conflicting evidence. For example, Fife's March 2, 2018 letter to Plaintiff acknowledges that Fife "gave [Plaintiff] permission to use some office space," but the space "was not to be used as [a] personal, private office." D.E. 39-3 at 36. Plaintiff, however, testified that he was authorized to, and provided, various constituent services associated with his Harrison Councilman role at the Office. *See* Pl.

8

IV.     CONCLUSION

For the reasons above, the Court will **GRANT** Defendants' summary judgment motion (D.E. 39), and **DISMISS** the Complaint.  An appropriate order accompanies this Opinion.

December 1, 2023

_____
Evelyn Padin, U.S.D.J.

---

Dep. 21-24.  Plaintiff also testified that, with Fife's knowledge, he was the *de facto* "head" of Harrison Development carrying out its business at the Office.  *Id.* at 27-29.  Plaintiff also testified that all of this was memorialized in documents seized from the Office after Plaintiff was locked out.  *Id.* at 29-30.